NEIL BARNABY AND MARINA VILLAGE, INC. v. ELBRIDGE H. BOARDMAN
AND WIFE, RUTH R. BOARDMAN AND O. L. GRAHAM, TRUSTEE

No. 559PA84

(Filed 4 June 1985)

**Mortgages and Deeds of Trust § 32.1— purchase money deed of trust—release of
security—action on note not permitted**

    A holder of a promissory note given by a buyer to a seller for the pur-
chase of land and secured by a deed of trust embracing such land may not
release his security and then sue on the note but must look exclusively to the
property conveyed in seeking to recover any balance owed. To allow the
holder to release its security and then sue upon the note would, in effect,
repeal the anti-deficiency statute, G.S. 45-21.38. The reasoning of *Brown v.
Kirkpatrick*, 217 N.C. 486, 8 S.E. 2d 601 (1940), is expressly rejected.

    Justice VAUGHN did not participate in the decision of this case.

    Justice MEYER concurring in result.

ON discretionary review of the decision of the Court of Ap-
peals, 70 N.C. App. 299, 318 S.E. 2d 907 (1984), reversing an order
dismissing the defendants' counterclaim entered by *Judge Wil-
liam H. Freeman* on May 12, 1983 in Superior Court, CARTERET
County. Heard in the Supreme Court March 13, 1985.

    *Kenneth M. Kirkman, P.A., by John E. Way, Jr., for the
plaintiff appellants.*

    *Sumrell, Sugg and Carmichael, by Fred M. Carmichael and
Rudolph A. Ashton, III, for the defendant appellees.*

    MITCHELL, Justice.

    This case presents questions concerning the proper inter-
pretation of the anti-deficiency statute, N.C.G.S. 45-21.38.[1] The

---

    1. § 45-21.38. Deficiency judgments abolished where mortgage represents
part of purchase price.

    In all sales of real property by mortgagees and/or trustees under powers of sale
contained in any mortgage or deed of trust executed after February 6, 1933, or
where judgment or decree is given for the foreclosure of any mortgage executed
after February 6, 1933, to secure to the seller the payment of the balance of the
purchase price of real property, the mortgagee or trustee or holder of the notes
secured by such mortgage or deed of trust shall not be entitled to a deficiency
judgment on account of such mortgage, deed of trust or obligation secured by

controlling question on appeal is whether the holder of a promissory note given by a buyer to a seller for the purchase of land and secured by a deed of trust embracing such land may release his security and then sue on the note. We conclude that any such note holder must look exclusively to the property conveyed in seeking to recover any balance owed. He may not sue on the note. Accordingly, we reverse the decision of the Court of Appeals.

At the outset we point out that this case requires appellate review of a dismissal of the defendants' counterclaim by the trial court under N.C.G.S. 1A-1, Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Therefore, the material allegations of fact alleged in that counterclaim are taken as admitted. *See Stanback v. Stanback,* 297 N.C. 181, 254 S.E. 2d 611 (1979). As a result, the facts recited in this opinion are either agreed upon by the parties or are allegations drawn from the defendants' counterclaim and taken as true.

On December 28, 1978, the defendants, Elbridge H. Boardman and wife, sold certain land near Cedar Island in Carteret County to the plaintiff, Neil Barnaby. Neil Barnaby executed and delivered to the Boardmans a promissory note for $150,000 for a portion of the purchase price of the land. The promissory note was secured by a purchase money deed of trust embracing the land and signed by Barnaby and his wife. The defendant sellers, Boardman and wife, subsequently executed certain deeds releasing all of the land embraced by the deed of trust. This was done at the request of the plaintiff buyer, Neil Barnaby, and in compliance with a prior agreement which had been incorporated by reference in the purchase money deed of trust. Neil Barnaby and his wife later conveyed the land in its entirety to the plaintiff Marina Village, Inc., subject to the purchase money deed of trust. Thereafter, the defendants, Boardman and wife, directed the trustee, the defendant O. L. Graham, to commence foreclosure proceedings under the purchase money deed of trust executed by

the same: Provided, said evidence of indebtedness shows upon the face that it is for balance of purchase money for real estate: Provided, further, that when said note or notes are prepared under the direction and supervision of the seller or sellers, he, it, or they shall cause a provision to be inserted in said note disclosing that it is for purchase money of real estate; in default of which the seller or sellers shall be liable to purchaser for any loss which he might sustain by reason of the failure to insert said provisions as herein set out.

the plaintiff, Neil Barnaby, and his wife. The trustee complied. As a result of an order by the Clerk of Superior Court dated February 8, 1982, the defendant trustee caused a notice of sale to be filed and advertised indicating that the land in question would be sold on March 8, 1982.

The plaintiffs, Neil Barnaby and Marina Village, Inc., commenced this action by the filing of a complaint on February 17, 1982, seeking among other things to restrain the defendants from exercising or attempting to exercise the power of sale contained in the purchase money deed of trust. The defendants filed an answer and counterclaim and amendments thereto. By these pleadings, the defendants admitted that they had released all of the land embraced by the purchase money deed of trust. By their counterclaim, the defendants sought an *in personam* judgment against the plaintiffs for the balance owed on the note plus costs and attorneys' fees. The plaintiffs moved under Rule 12(b)(6) to dismiss the defendants' counterclaim as amended for failure to state a claim. After a hearing, the trial court entered an order which, among other things, allowed the motion to dismiss the counterclaim as amended. The trial court specifically found that there was no just reason for delay. The defendants appealed to the Court of Appeals which reversed the order of the trial court. On December 4, 1984, we allowed the plaintiffs' petition for discretionary review.

The plaintiffs assign error to the holding of the Court of Appeals reversing the trial court's order dismissing the defendants' counterclaim on the promissory note. The plaintiffs contend that to allow a creditor to release the property embraced by the purchase money deed of trust forming the security for a note and then obtain a personal judgment against the purchaser on the note would have the effect of repealing the anti-deficiency statute. The defendants contend, on the other hand, that their release of their security makes the statute inapplicable, since it applies only to notes secured by purchase money mortgages or deeds of trust. They argue that the statute does not apply, because the note they hold is no longer secured by any such mortgage or deed of trust. The Court of Appeals agreed with the reasoning of the defendants and stated:

> Neither the anti-deficiency statute nor *Realty Co., supra,* purports to determine or restrict the rights of a purchase money mortgagee who, at the time of default, is unsecured because he, the mortgagee, has released his security in accordance with the terms of an agreement contained in the purchase money mortgage or deed of trust.

70 N.C. App. at 302-03, 318 S.E. 2d at 909.

We find the interpretation of the statute advanced by the defendants and accepted by the Court of Appeals too mechanically literal and restrictive. In *Realty Co. v. Trust Co.,* 296 N.C. 366, 250 S.E. 2d 271 (1979), we pointed out that the intent of the 1933 General Assembly in enacting the statute was "to protect vendees from oppression by vendors and mortgagors from oppression by mortgagees." 296 N.C. at 371, 250 S.E. 2d 274. We went on to say that:

> Having in mind the purpose for which G.S. 45-21.38 was adopted, the perceived problem which the statute seeks to remedy, and the effect which a literal construction of the statute produces, we are compelled to construe the statute more broadly and to conclude that the Legislature intended to take away from creditors the option of suing upon the note in a purchase-money mortgage transaction. This construction of the statute not only prevents its evasion, but also gives effect to the Legislature's intent.

296 N.C. at 373, 250 S.E. 2d at 275.

The defendants here argue, nevertheless, that they no longer have "options" since they have released their security and must recover upon the note if at all. Prior to releasing the security, however, the defendants were secured and could foreclose under the purchase money deed of trust in the event of default on the note. To allow them to release their security and then sue upon the note would give them the "option" forbidden by the statute. Such a result would violate the intent of the General Assembly and, in effect, repeal the statute.

The anti-deficiency statute does not allow the buyer "to deny himself the protection afforded him" by the statute, as this "would be to allow by indirection that which was directly forbidden." *Bank v. Belk,* 41 N.C. App. 356, 367, 255 S.E. 2d 421, 428,

*disc. rev. denied*, 298 N.C. 293, 259 S.E. 2d 911 (1979). Since the buyer may not deny himself the protection of the statute, the seller certainly may not deny him its protection by the simple expedient of releasing the security and suing upon the note. As we have previously stated:

> [T]he manifest intention of the Legislature was to limit the creditor *to the property conveyed* when the note and mortgage or deed of trust are executed to the seller of the real estate and the securing instruments state that they are for the purpose of securing the balance of the purchase price.

*Realty Co. v. Trust Co.*, 296 N.C. at 370, 250 S.E. 2d at 273 (emphasis added). Such creditors "may not sue upon the note." *Bank v. Belk*, 41 N.C. App. at 363, 255 S.E. 2d at 426. *See Brown v. Jensen*, 41 Cal. 2d 193, 259 P. 2d 425 (1953), *cert. denied*, 347 U.S. 905 (1954).

The defendant sellers in the present case rely upon this Court's decision in *Brown v. Kirkpatrick*, 217 N.C. 486, 8 S.E. 2d 601 (1940) and contend that the holder of a note originally secured by a purchase money deed of trust may bring an *in personam* action under the note in any case in which the note later becomes unsecured. In *Brown* this Court held that the holder of a note secured by a second purchase money deed of trust could bring an *in personam* action upon the note when he was left unpaid and unsecured because the property had been sold under a deed of trust having priority over his. The *Brown* holding was based upon the following reasoning:

> [T]his statute does not by its terms prohibit the holder of a note, though secured by a second deed of trust, from obtaining judgment on the note when the property has been sold under another deed of trust having priority of lien. The statute applies only to the holders of notes "secured by such deed of trust," that is the deed of trust under which the security was foreclosed and the land sold. It refers to the "obligation secured by the same." The holder of the note secured by the first deed of trust upon foreclosure, presumably, will receive satisfaction of his note from the sale, or he can protect himself by purchase of the land. But the holder of the note secured by the second deed of trust, who receives nothing, or an insufficient amount, from the sale, finds him-

self without security. In this situation the Court will not extend by judicial interpretation the provisions of the statute, and deny him the right to judgment for a valid debt.

217 N.C. at 487-88, 8 S.E. 2d at 602.

The reasoning employed in *Brown* is the same as that of the Court of Appeals in the present case and is not in harmony with *Realty Co. v. Trust Co.*, 296 N.C. 366, 250 S.E. 2d 271 (1979). It has been said:

> The conflict between *Brown v. Kirkpatrick* and *Ross Realty* is apparent. If the value of the security is less than the outstanding balance on the purchase price, a purchase money mortgagee has no hope of recovering the entire debt after default unless the purchase money mortgage can be subordinated to the rights of a third-party secured creditor who will foreclose and sell the property. Relying on *Brown*, the purchase money creditor, though now unsecured, can assert his rights against the debtor on the note.

*Note*, 58 N.C. L. Rev. 855, 862-63 (1980). It also is significant that this Court expressly relied in part upon the case of *Page v. Ford*, 65 Or. 450, 131 P. 1013 (1913) for its reasoning and holding in *Brown*. In *Realty Co.*, however, this Court analyzed *Page* in more detail and expressly rejected its reasoning. We conclude that the rationale of *Brown v. Kirkpatrick*, 217 N.C. 486, 8 S.E. 2d 601 (1940) was severely undercut by *Realty Co. v. Trust Co.*, 296 N.C. 366, 250 S.E. 2d 271 (1979), and we now expressly reject the reasoning of *Brown*.[2]

The defendants contend that the purchase and sale in the present case represented a commercial transaction by "sophisticated business people" and should not be subject to the anti-deficiency statute. Some courts have fashioned special rules or exceptions to their anti-deficiency statutes for particular types of commercial transactions. The Supreme Court of California in *Spangler v. Memel*, 7 Cal. 3d 603, 498 P. 2d 1055, 102 Cal. Rptr. 807 (1972), for example, exempted certain purchase money deeds of trust subordinated to commercial construction loans from the

---

2. It can be argued that the result reached in *Brown* was correct because the deed of trust in that case was not a "purchase-money deed of trust under G.S. 45-21.38." *Childers v. Parker's, Inc.*, 275 N.C. 256, 261, 162 S.E. 2d 481, 484 (1968).

rule it had established in *Brown v. Jensen*, 41 Cal. 2d 193, 259 P. 2d 425 (1953), *cert. denied*, 347 U.S. 905 (1954) barring any remedy other than foreclosure. Courts in such cases were, of course, interpreting and applying the particular statutes before them. We find no indication in our statute or elsewhere that the 1933 General Assembly of North Carolina intended any special exclusion of commercial transactions from our anti-deficiency statute. To the contrary, some evidence exists indicating that "sophisticated business people" needed no such special protection even during the Great Depression which led to the adoption of our statute. *See* Brabner-Smith, *Economic Aspects of the Deficiency Judgment*, 20 Va. L. Rev. 719, 723 (1934). We reject this contention by the defendants.

The teaching of *Realty Co. v. Trust Co.* is that our anti-deficiency statute "bars any suit on the note whether before or after foreclosure." Note, 15 Wake Forest L. Rev. 822, 830 (1979). We reiterate here our statement that the creditor is limited "*to the property conveyed* when the note and mortgage or deed of trust are executed to the seller of the real estate and the securing instruments state that they are for the purpose of securing the balance of the purchase price." *Realty Co. v. Trust Co.*, 296 N.C. at 370, 250 S.E. 2d at 273 (emphasis added). In such cases the creditor simply may not sue upon the note.

The decision of the Court of Appeals is reversed. This case is remanded to the Court of Appeals with instructions to reinstate the order of the trial court dismissing the defendants' counterclaim.

Reversed and remanded.

Justice VAUGHN did not participate in the decision of this case.

Justice MEYER concurring in result.

I concur only in the result reached by the majority. I deem it unnecessary and unwise for the majority simply to reach out and reject the reasoning of (*i.e.*, virtually overrule) *Brown v. Kirkpatrick*, 217 N.C. 486, 8 S.E. 2d 601 (1940), when the issue upon which that case was decided is not even remotely before us

in this case. *Brown* dealt only with a note secured by a second purchase-money deed of trust left unpaid and unsecured because the property had been sold under a first deed of trust having priority. That situation is clearly distinguishable from the factual situation before this Court in this case. The *Brown* issue was not raised by this appeal and thus was neither briefed nor argued by the parties. The majority's boldness in virtually overruling *Brown* in this situation is somewhat surprising since, ordinarily, the bench and bar would consider any comment on the *Brown* issue in this case to be obiter dictum.

It is also appropriate, once again, to point out that the application of the anti-deficiency judgment statute is relatively rare in North Carolina because seller-financing of home purchases is itself relatively rare. Usually sellers need the equity from the sale of their home to acquire a new home for themselves. Most home purchase-money financing is done not by the vendor but by savings and loan institutions, banks, mortgage companies, and insurance companies, to which the anti-deficiency judgment statute does not apply. This being so, the ostensible purpose of the anti-deficiency judgment statute is not really being served. The application of the statute today is not primarily to unwary homeowners, but to sophisticated developers and land speculators who purchase with at least partial owner financing. Perhaps the statute has outlived its usefulness—at least to the extent that it is not applicable to the third-party thrift institutions, mortgage companies, and insurance companies, which provide the great bulk of home financing.