**In re REX PRINTING, INC., Debtor.**

**Bankruptcy No. 80–60355.**

United States Bankruptcy Court,
N. D. Indiana,
Hammond Division at Gary.

Sept. 28, 1981.

---

## MEMORANDUM

RUSSELL H. NEHRIG, Bankruptcy Judge.

On April 14, 1976, American State Bank filed a financing statement with the Indiana Secretary of State's Office. This statement reflected a transaction which created a security interest in favor of the Bank in certain property owned by Rex Wyatt, d/b/a Rex Printers. About one year later, the debtor, Rex Printers, incorporated and became known as Rex Printing, Inc.

Thereafter, on May 26, 1978, Rex Wyatt and Dorothy Wyatt executed an installment note, disclosure statement and security agreement with the Bank. These transactions secured the Bank's interest in inventory, equipment, goods, instruments and chattel paper, etc., of the debtor, Rex Printing, Inc. The Bank filed a financing statement with the Starke County Recorder's Office on May 30, 1978. The Bank filed the statement under the names of Rex Printing, Inc., Rex Wyatt and Dorothy Wyatt. On June 6, 1978, the Bank filed a new financing statement under Rex Printing, Inc., Rex Wyatt and Dorothy Wyatt in Indiana's Secretary of State's Office.

Although the financing statements appear complete, the underlying security agreements neither included Rex Printing, Inc., as a party, nor demonstrated the execution of the agreements by an officer or agent of the corporation. However, since the Bank filed the 1978 financing statements under Rex Printing, Inc., the Bank possessed knowledge of the debtor's incorporation.

Rex Printing, Inc., filed a petition in bankruptcy on March 26, 1980. On December 3, 1980, American State Bank filed its Petition for Abandonment and Relief from Stay. The trustee, Daniel L. Freeland, filed objections to the Bank's petition.

The question presented by these facts is whether the trustee may avoid the Bank's lien as an unperfected security interest. This determination requires an inquiry into the validity of a security agreement where the secured property belongs to a corporation which did not sign the security agreement and where two individuals signed the agreement in their personal capacity.

The filed financing statement serves the primary notice function. Still, the Uniform Commercial Code forsees the inspection of this document as a first step in discovering the debtor's affairs. Ind. Code Section 26–1–9–402, Comment 2. Although the U.C.C. facilitates the discovery of additional information without requiring that one examine the security agreement, a look at the signed security agreement is a logical step. Even though a creditor has properly filed a financing statement, his secured status is ultimately determined by the validity of the underlying security agreement.

A bankruptcy trustee may avoid an unperfected security interest. *In re Mitchell*, 9 B.R. 577 (Bkrtcy.D.Or.1981). Section 544(a) of the Bankruptcy Reform Act of 1978 accords the bankruptcy trustee the position of a hypothetical lien creditor with respect to the obligations created by the debtor prior to the filing of a Bankruptcy

Petition. A bankruptcy trustee, as a lien creditor, has priority over unperfected security interests. *See* Ind. Code Section 26–1–9–301(1)(b) (1980). Therefore, where a creditor has an unperfected security interest at the time the bankruptcy petition is filed, the trustee has priority over such creditor and may avoid the creditor's interest in any property of the debtor.

■ Indiana Code Section 26–1–9–303(1) (1980), requires a security interest to have attached to the collateral before allowing the interest a perfected status. However, a security interest cannot attach until there is an agreement that it attach, value is given, and the debtor acquires rights in the collateral. Ind. Code Section 26–1–9–204(1) (1980). A perfected security interest requires the signature of the debtor on the security agreement. *See In re Corsi*, 24 U.C.C. 216 (1978).

■ In fact, the evidence indicated that Rex Printing, Inc. had sole control and/or rights in the secured property. In this case, neither Rex Printing, Inc. nor any agent or officer of the corporate debtor signed the security agreement in a representative capacity. Since the corporate debtor controlled the property, but did not legally sign the security agreement, the Bank's interest is unperfected. *See Little v. County of Orange*, 31 N.C.App. 495, 229 S.E.2d 823 (1976). In *Little*, the court held that an agreement involving a corporate debtor was ineffective because the agreement was signed by an individual who did not indicate his corporate or official capacity. *Id.* In *Haverell Distributors, Inc. v. Haverell Mfg. Corp.*, 115 Ind.App. 501, 509, 58 N.E.2d 372, 375 (1944), the Indiana Appellate Court refused to enforce a chattel mortgage which was not properly acknowledged by a corporate debtor in his corporate capacity.

As between the parties to the agreement, the Bank is correct. The failure to designate corporate capacity is not fatal to the agreement between the parties to the agreement. However, the presence of the bankruptcy trustee, a third party without knowledge of the facts, becomes fatal to the secured status of the lender. Some courts in similar factual situations read the formality requirements of the U.C.C. more strictly where there is the presence of a third party. *See River Oaks Chrysler-Plymouth, Inc. v. Barfield*, 482 S.W.2d 925, 928 (Tex.Civ.App.1972).

ORDER

The petition for abandonment and release from stay filed by American State Bank is hereby denied.